1
2
3
4
5
6
7
8
9
10

**O**
**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| SHANNA CHARLES, | Case № 2:23-cv-02011-ODW (AFMx) |
|        Plaintiff, | **ORDER REMANDING CASE** |
|   v. | |
| TRANSDEV SERVICES, INC. et al., | |
|        Defendants. | |

## I.    INTRODUCTION

This is an employment discrimination and wage-and-hour action initially brought in state court by Plaintiff Shanna Charles against her employer Transdev Services, Inc. and Transdev supervisor Brian Otchis.  Defendants removed the case to this Court, alleging subject matter jurisdiction based on both diversity and federal preemption under the Labor Management Relations Act ("LMRA").  The Court ordered the parties to show cause why the case should not be remanded for lack of subject matter jurisdiction. (OSC, ECF No. 19.)  For the following reasons, the Court finds Defendants fail to establish subject matter jurisdiction and accordingly **REMANDS** the case.

## II.    BACKGROUND

As alleged in the operative Complaint, Charles, a Black woman, began working for Transdev in February 2018.  (Notice of Removal ("NOR"), Ex. A ("Compl.") ¶ 7,

ECF No. 1.)   During her employment, Charles experienced race- and gender-based workplace harassment in the form of biased and harassing comments by one of her co-workers, a man.   (*Id.* ¶ 8.)   Charles complained to Transdev's human resources department, which failed to take action to address the harassment.  (*Id.* ¶ 9.)

In 2021, Charles filed a complaint with the Equal Opportunity Employment Commission, and thereafter, Transdev fired the offending co-worker.   (*Id.* ¶ 10.) However, Transdev also began retaliating against Charles by exaggerating minor transgressions and finding additional pretext to reprimand or discipline her.  (*Id.* ¶ 12 (listing instances).)   Additionally, Charles did not receive the meal breaks, rest breaks, regular wages, and overtime wages California's wage-and-hour statutes guarantee employees.  (*Id.* ¶¶ 13–16.)

On February 14, 2023, Charles initiated this action against Defendants Transdev Services, Inc. and Brian Otchis in state court for workplace discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), constructive discharge, and violations of the wage-and-hour provisions of the California Labor Code.  (NOR ¶ 6; Compl.)  On March 17, 2023, Defendants removed the action to this Court based on (1) diversity jurisdiction, and (2) federal question jurisdiction due to preemption under the LMRA. (*See* NOR ¶¶ 22–95.)  The Court ordered the parties to show cause why the case should not be remanded for lack of subject matter jurisdiction.  (OSC.) Defendants responded to the Court's Order to Show Cause, while Charles did not. (OSC Resp., ECF No. 20.)

### III.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal courts have original jurisdiction where an action arises under federal law, or where the plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000.   28 U.S.C. §§ 1331, 1332(a).  "[T]he core principle of federal removal jurisdiction on the basis of

diversity" is that diversity "is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

Federal courts have an obligation to determine the existence of subject matter jurisdiction, regardless of whether the parties raise the issue. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The court may raise the issue of subject matter jurisdiction on its own initiative at any stage in the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). "[B]oth sides submit proof," and the court decides whether the defendant has proven the amount in controversy by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," whether removal is challenged by an opponent or by the court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)).

## IV.   DISCUSSION

Defendants fail to demonstrate diversity jurisdiction because they fail to demonstrate by a preponderance of the evidence that over $75,000 is in controversy. Defendants also fail to demonstrate federal preemption under the LMRA because they fail to demonstrate that the operative collective bargaining agreement qualifies for the exemption provided by California Labor Code section 514. Thus, no basis for this Court's subject matter jurisdiction exists, and it is appropriate to remand the matter.

### A.   Diversity Jurisdiction—Amount in Controversy

With regard to diversity jurisdiction, the principal issue is whether the amount of money Charles places in controversy with her claims exceeds $75,000. In their

3

Response to the Court's order to show cause, Defendants indicate that the following categories of damages are at issue: (1) lost wages; (2) emotional distress; (3) wage-and-hour claims; (4) punitive damages; and (5) attorneys' fees.   (OSC Resp. 17–21.) Charles did not file a reply to Defendants' Response and therefore did not contest Defendants' characterization of her damages categories.  The Court adopts Defendants' five categories of damages for the purpose of this analysis and considers each category in turn.

>    *1.    Lost Wages*

Defendants assert that $3,688.00 in lost wages are in controversy, representing wages lost between the date of Charles's final workday and the date the case was removed.  (OSC Resp. 17–18.)   This category of damages arises from Charles's discrimination and retaliation claims and represents the wages Charles would have earned had her employment not terminated.  *See, e.g.*, *Zamudio v. Aerotek, Inc.*, No. 1:21-cv-01673-JLT-BAK (SKO), 2022 WL 458059, at *3 (E.D. Cal. Feb. 15, 2022) (calculating lost wages for purposes of determining amount placed in controversy by wrongful termination claim); *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) (defining this type of lost wages as "back pay" and distinguishing from "front pay").   However, Defendants provide no evidence whatsoever to substantiate (1) the date of Charles's final workday, (2) Charles's hourly wage, and (3) the number of hours per week Charles typically worked.  (*See generally* Resp.)  Moreover, none of this information appears on the face of the Complaint.  (*See generally* Compl.)  Defendants simply assert this information in their OSC Response and ask the Court to accept it as true.

In ordering Defendants to show cause regarding subject matter jurisdiction, the Court clarified that its Order to Show Cause was "a dual-pronged inquiry into both the facial sufficiency of Defendants' jurisdictional allegations as well as the factual sufficiency of Defendants' demonstration of subject matter jurisdiction, which the Court now calls on Defendants to make."  (OSC 2.)  By way of this language and the

remainder of the Order to Show Cause, the Court called upon Defendants to demonstrate, by a preponderance of the evidence, the amount of money Charles's Complaint places in controversy. (*Id.*)  By failing to produce any evidence whatsoever to support their lost wages calculations, Defendants fail to demonstrate by a preponderance of the evidence that any amount of lost wages is in controversy.

Defendants makes an additional effort to demonstrate the amount of lost wages in controversy by pointing to Charles's prayer for relief "in the sum of $250,000." (OSC Resp. 18.)  However, Charles's prayer for $250,000 is not tethered to any specific factual allegations; moreover, the figure comprises not only lost wages but also "includ[es] losses for pain, suffering and emotional distress, . . . and other incidental and consequential expenses." (Compl., Prayer ¶¶ 1–3.)  Accordingly, Charles's prayer for $250,000 in relief provides little to no evidence of the amount of lost wages actually in controversy in this case and is insufficient to meet Defendants' burden.

### 2.    *Emotional Distress Damages*

Defendants assert that $250,000 in emotional distress damages are in controversy, (Resp. 18–19), based on Charles's prayer "for general damages including losses for pain, suffering and emotional distress, as allowed by law, in the sum of $250,000." (*Id.*, Prayer ¶ 1.)  Courts may properly consider emotional distress damages as part of the amount in controversy for jurisdictional purposes. *Sasso v. Noble Utah Long Beach, LLC*, No. 2:14-cv-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015).  However, for two reasons, Defendants fail to demonstrate that any emotional distress damages are in controversy here.

First, as with their lost wages argument, Defendants point to a prayer for $250,000 that consists of *several* categories of damages, not just emotional distress damages, as proof of $250,000 in emotional distress damages alone.  This is illogical. Charles's bare, conclusory prayer for amalgamated damages does not provide sufficient proof of the amount of emotional distress damages actually in controversy.

Second, Defendants fail to present any similar cases for comparison. To determine the amount of emotional distress damages in controversy, courts consider the amount of emotional distress damages awarded by juries in similar cases. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1146–47 (E.D. Cal. 2018). Here, Defendants fail in their burden because they fail to cite any similar cases and describe how the facts of this case are similar to the facts of the other cases. Defendants simply cite another case where the court compared the facts of *that* case to other cases. (Resp. 18–19.) This is insufficient.

Accordingly, the Court does not include any emotional distress damages in the demonstrated amount in controversy.

### 3. Wage-and-Hour Claims

Defendants assert that Charles places $20,666.62 in controversy by way of her wage-and-hour claims. (Resp. 19–20.) Defendants' figure includes $5,392.92 in overtime pay, $5,532 in waiting time penalties, $7,191.60 in meal and rest break penalties, and $2,550 in wage statement penalties. (*Id.* at 20.) These calculations, like Defendants' lost wages calculations, are based on numerical assumptions regarding Charles's hourly rate, the number of hours per week she worked on average, and her last day of work. However, Defendants fail in their burden in relation to the wage-and-hour claims for two reasons.

First, as discussed in the context of lost wages, Defendants provide no proof whatsoever of any of the numerical assumptions they used for their calculations, including Charles's hourly wage, the number of hours per week Charles worked on average, and Charles's last day of work. Defendants simply set forth these figures in their brief and ask the Court to accept them.

Defendants fail in their burden because arguments in an attorney-authored brief are not evidence. *See Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002). The Court expressly invited Defendants to submit evidence on the issue of the amount in controversy, and Defendants did not submit any evidence at

1    all.  Accordingly, Defendants fail to demonstrate by a preponderance of the evidence

2    that any amount of damages is in controversy in relation to Charles's wage-and-hour

3    claims.

4         For a second, independent reason, Defendants fail in their burden of

5    demonstrating the value of Charles's overtime, meal break, and rest break claims.

6    Regarding the frequency of Transdev's failure to provide Charles with the required meal

7    and rest breaks, the Complaint indicates simply that Defendants committed this failure

8    "on multiple occasions."  (Compl. ¶¶ 13, 73.)  Regarding the frequency of Transdev's

9    overtime violations, the Complaint does not indicate anything at all.  (*See id.* ¶¶ 62–69.)

10   Based on Charles's bare allegations, it is neither reasonable nor logical for Defendants

11   to simply assume, as they do, one missed meal break per week, one missed rest break

12   per week, and one unpaid overtime hour per week. "Faced with a vague pleading, . . .

13   the much-more-sensible route would be to try to pin Plaintiff down, in state court . . . ,

14   with respect to what the Complaint's allegations actually mean with respect to violation

15   rates."  *Toribio v. ITT Aerospace Controls LLC*, No. 2:19-cv-05430-GW (JPRx),

16   2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019).  Otherwise, amount-in-controversy

17   calculations on vague wage-and-hour claims become, as they have in this case, "a

18   wasteful and silly, but routine, exercise in mathematical fantasyland."[1]  *Id.*; *see Peters*

19   *v. TA Operating LLC*, No. 5:22-cv-01831-JGB (SHKx), 2023 WL 1070350, at *10

20   (C.D. Cal. Jan. 26, 2023) ("[T]his Court does not find Defendants' assumption

21   unreasonable simply because it is too low; it finds it unreasonable because is it 'pulled

22   from thin air.'" (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir.

23   2015)); *see also Gonzalez v. Randstad Pros. US, LLC*, No. 2:22-cv-05744-JLS (PDx),

24

25

26   ---
     [1]  The complaint Charles filed with the Equal Employment Opportunity Commission ("EEOC
27   Complaint"), which is attached to the state-court Complaint accompanying Defendants' Notice of
     Removal, contains additional details about the nature of these wage-and-hour claims, but Defendants
28   do not engage with the information in the EEOC Complaint in any way.  (*See generally* Resp.; Compl.
     Ex. 1 ("EEOC Compl.").)

2022 WL 17081053, at *3–4 (C.D. Cal. Nov. 18, 2022) (recognizing that courts differ in their approaches to this issue and adopting the approach embodied in *Toribio*).

For these reasons, Defendants fail to demonstrate by a preponderance of the evidence that any amount of damages is in controversy in relation to Charles's wage-and-hour claims.

### 4. Punitive Damages

Defendants argue that $55,000 in punitive damages are in controversy. (Resp. 20–21.) "'It is well established that punitive damages are part of the amount in controversy' for purposes of establishing diversity jurisdiction." *Sasso*, 2015 WL 898468, at *6 (citing *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001)). However, "the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *Ogden v. Dearborn Life Ins. Co.*, --- F. Supp. 3d. ---, 2022 WL 17484616, at *3 (D. Ariz. 2022). "Defendant must present appropriate evidence, such as jury verdicts in analogous cases, to show that a claim for punitive damages establishes that it is more likely than not that the amount in controversy exceeds $75,000." *Id.* This involves "articulat[ing] why the *particular facts* that are alleged in the instant action might warrant extraordinary punitive damages." *Id.* (quoting *Haisch v. Allstate Ins. Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996)).

Defendants support their assertion that $55,000 in punitive damages are in controversy by citing to a case in which a court found $55,000 of punitive damages to be in controversy. (OSC Resp. 20–21.) In making this argument, Defendants misconstrue their burden. Defendants' task is not merely to cite to other cases where courts found $55,000 in punitive damages to be in controversy for the purpose of subject matter jurisdiction. Instead, Defendants must cite to other cases where a party actually received a verdict awarding a particular amount of punitive damages and explain how the facts of this case are similar to the facts of those other cases. *See Ogden*, 2022 WL

17484616, at *3.  Defendants fail to carry this burden and accordingly fail to show that any particular amount of punitive damages is in controversy in this case.

      5.    *Attorneys' Fees*

Defendants argue that $30,000 in attorneys' fees are in controversy, based on 100 hours of attorney work billed at $300/hour.  (OSC Resp. 21.)  When, as here, an underlying statute authorizes an award of attorneys' fees, the fees may be included in the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  The Court accepts Defendants' argument for the purposes of this analysis and assumes $30,000 in attorneys' fees to be in controversy in this case.

      6.    *Summary*

In summary, Defendants generally fail to support any of their amount-in-controversy calculations with evidence and accordingly fail in their burden.  That said, even accepting Charles's hourly rate and other assumptions as Defendants assert them to be, these assumptions support, at most, the lost wages claim ($3,688), the waiting time penalties claim ($5,532), and the wage statement penalties claim ($2,550), for a total of $11,770.  Adding this amount to the $30,000 in presumed attorneys' fees yields a number well below the jurisdictional threshold.  Accordingly, the Court lacks diversity jurisdiction.

Defendants' argument regarding Otchis's status as a sham defendant is moot, and the Court does not reach it.

**B.    Federal Question Jurisdiction—LMRA Preemption**

Defendants also assert that this Court has subject matter jurisdiction because the case raises a federal question.  Specifically, Defendants argue that Charles's overtime claim is preempted under § 301 of the Labor Management Relations Act ("LMRA"). (NOR ¶ 93; OSC Resp. 22–24.)

Section 301(a) of the LMRA provides district courts with jurisdiction over claims arising from "violation of contracts between an employer and a labor organization representing employees."  29 U.S.C. § 185(a).  Federal substantive law preempts state

law in an action arising under § 301 to further the interest in uniform federal interpretation of collective bargaining agreements. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–10 (1985).

To determine whether a state law claim is preempted by § 301 of the LMRA, the Court must first consider whether the asserted cause of action involves a right conferred upon an employee by virtue of state law or by the operative collective bargaining agreement ("CBA"). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right exists "solely as a result of the CBA, then the claim is preempted." *Id.* However, "claims are not simply CBA disputes by another name . . . if they just refer to a CBA-defined right, rely in part on a CBA's terms of employment, run parallel to a CBA violation, or invite use of the CBA as a defense." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc) (citations omitted).

Second, if the right does exist independently of the CBA, the Court must then consider whether it is "substantially dependent on analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d at 1059 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). If the claim requires the court to "interpret," rather than merely "look to," the CBA, then the claim is "substantially dependent" thereon and is preempted by § 301. *Id.* at 1059–60. "The plaintiff's claim is the touchstone for this analysis; the need to interpret the [CBA] must inhere in the nature of the plaintiff's claim." *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc)).

Here, Defendants argue that Charles's overtime claim is statutorily barred by California Labor Code section 514 and that accordingly, pursuant to *Curtis v. Irwin Industries*, 913 F.3d 1146, 1150 (2019), her overtime claim necessarily arises from or requires interpretation of the CBA, preempting the claim. (OSC Resp. 23.)

The flaw in Defendants' argument is that it fails to demonstrate that the operative CBA is a qualifying CBA under Labor Code section 514. The California Labor Code

provision on which Charles's overtime claim relies, section 510, is subject to an exception for employees covered by qualifying CBAs. Specifically:

> Sections 510 and 511 [for overtime violations] do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514.  Here, Defendants fail to engage with the provisions of the operative CBA to demonstrate that, as the section 514 exemption requires, the CBA provides (1) premium wages for all overtime hours worked and (2) a regular hourly rate of pay of not less than thirty percent more than state minimum wage.  Accordingly, Defendants fail to show that Charles's overtime claim is subject to the section 514 exemption for qualifying CBAs and accordingly fail to show that the LMRA preempts Charles's overtime claim.

Defendants do not suggest any other basis for federal question jurisdiction. Accordingly, Defendants fail to demonstrate subject matter jurisdiction based on a federal question.

///
///
///
///
///
///
///
///
///
///
///

## V.    CONCLUSION

For the foregoing reasons, the Court **REMANDS** the matter to the Superior Court of California, County of Los Angeles, 111 North Hill Street, Los Angeles CA 90012, Case No. 23STCV03162.  The Court **VACATES** all dates and deadlines in this matter. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

July 7, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**